JjJOAN BERNARD ARMSTRONG, Chief Judge.
This is a workers’ compensation case. After trial, the Workers’ Compensation Judge (“WCJ”) found that the employee, Sidney Hutchison, sustained an on the job injury which aggravated a preexisting back injury. The WCJ then found the employee entitled to reinstatement of temporary total disability benefits and payment of all medical and transportation expenses. The WCJ also found that the employer, Aldworth Company, Inc. “(Aid-worth”), had been arbitrary and capricious and accordingly, awarded the employee statutory penalties and attorney fees. The penalties assessed included $2000 for the employer’s failure to pay medication, medical and transportation expenses; $2000 for the failure to authorize back surgery; and $2000 for the employer’s failure to pay indemnity benefits. The WCJ awarded $6000 in attorney fees. The employer appeals this decision. For the reasons that follow, we reverse that portion of the judgment that assessed the employer with a penalty of $2000 for its failure to pay indemnity benefits. We otherwise affirm the judgment.
The employer, Aldworth, hired Sidney Hutchison in mid-September 2001 as a truck driver. Before he was hired, he passed a pre-employment physical examination. Mr. Hutchison’s job responsibilities also required him to assemble | ^modular units, lift heavy items, crawl under buildings and do overhead reaching. He worked approximately forty to sixty hours per week.
Mr. Hutchison sustained an on the job injury on October 17, 2001. He was carrying a forty or fifty pound air compressor out of a modular system when he tripped over a loose threshold cover, which caused him to fall, striking his tailbone on the ground. Mr. Hutchison was transported to the emergency room of Chalmette Medical Center on the same day. The emergency room record describes the mechanics of Mr. Hutchison’s fall, along with Mr. Hutchison’s chief complaint of severe lower back pain. The report also reflects that Mr. Hutchison provided a previous medical history of a herniated disc with radiation of pain and numbness in the right leg that he associated with an injury that happened five or six years earlier.
Two days later, Mr. Hutchison presented to the emergency room of Lakeview Medical Center with complaints of low back pain. He returned with similar complaints on October 29, 2001. During this time period, Mr. Hutchison attempted to find a private doctor. According to his uncontradicted testimony, the employer referred him to Dr. Donald Dietze, a neurosurgeon. Dr. Dietze first saw Mr. Hutchison on November 2, 2001. Mr. Hutchison provided him with a history of his accident and also informed the doctor about his 1996 back injury. Dr. Dietze diagnosed Mr. Hutchison with acute traumatic sciatica and acute back pain. He recommended a MRI and placed him on a course of short-term steroids. He further recommended that Mr. Hutchison remain off work. Mr. Hutchison returned to see Dr. Dietze on November 21, 2001. The doctor’s findings remained essentially the same. On January 11, 2002, Dr. Dietze *1055 met with Mr. Hutchison’s attorney and the employer’s nurse case manager. The doctor approved Mr. Hutchison’s decision to presume treatment with Dr. Charles Billings, the orthopedist who had treated Mr. Hutchison for his preexisting back complaints. Dr. Dietze’s last contact with Mr. Hutchison was on May 12, 2002. A nurse from St. Tammany Parish Hospital called to consult with him concerning Mr. Hutchi-son’s emergency room admission for severe back pain. Dr. Dietze did not treat Mr. Hutchison further because the employer refused to authorize treatment. During the time period that Mr. Hutchison was under his care, Dr. Dietze did not release him to return to work.
Mr. Hutchison first sought treatment with Dr. Charles Billings for the instant work related injury on November 2, 2001. Mr. Hutchison had previously treated with Dr. Billings’ office for back pain off and on since June 1996. Surgery had been recommended as an option sometime in early 2001. Dr. Billings also had restricted Mr. Hutchison from engaging in activities that included heavy lifting, repetitive bending or stooping, as well as prolonged standing' or sitting. Based on these restrictions, Mr. Hutchison applied for social security disability benefits. He was denied the benefits. Thereafter, in May 2001, he returned to work on a full-time basis with Modular Modifications. Notwithstanding' the restrictions placed on him by Dr. Billings, Mr. Hutchison did carpentry work and refurbished office units. He periodically sought treatment with Dr. Billings for the low back pain that he continued to experience. His last treatment date with Dr. Billings prior to the instant accident claim was on September 6, 2001. At that time, he rated his pain as a nine on a scale of 10. Nevertheless, he continued to work in pain. A short time later, 'he left his job at Modular Modifications and began work with the employer/defendant, Aldworth, where he injured himself as previously described herein.
|4Upon his return to Dr. Billings, Dr. Billings found that his accident had exacerbated his preexisting back symptoms. He related Mr. Hutchison’s increased pain complaints to the October 17, 2001 fall. Dr. Billings believed that Mr. Hutchison’s condition had worsened because of his increased pain complaints. He continued to recommend surgery as an option.
On March 25, 2002, Dr. Billings met with the. employer’s nurse case manager. He advised her that Mr. Hutchison was at maximum medical improvement regarding non-operative treatment. If surgery was not elected, then he could return to light or sedentary type work provided his pain was under reasonable control. Dr. Billings also signed a form prepared by the employer’s case manager. The form related Mr. Hutchison’s need for continued treatment to his chronic injury rather than his work accident. Dr. Billings later testified that this form did not fully capture Mr. Hutchison’s physical condition.
On the following day, March 26, 2002, Mr. Hutchison returned to see Dr. Billings. At that time, Mr. Hutchison said he wanted to proceed with surgery. However, Aldworth refused to authorize the surgery based on the form completed by its case manager. Aldworth elected to retain legal counsel to advise if it could terminate benefits. Benefits were terminated on May 2, 2002. Thereafter, Aldworth referred Mr. Hutchison to Dr. John Sweeney, an orthopedist, for a second medical opinion. Dr. Sweeney did not find any objective evidence to relate Mr. Hutchi-son’s present injury to his work accident. He related his disability to his preexisting back condition.
Mr. Hutchison filed a disputed claim for compensation after his benefits were ter *1056 minated. The disputed issues centered on the employer’s termination of benefits, refusal to authorize treatment by a neurosurgeon, refusal to authorize | ¡^surgery and failure to pay medical expenses. He also sought penalties and attorney fees.
Mr. Hutchison continued to seek medical treatment and receive prescription medication for his back pain even after the employer decided to terminate benefits. He saw Dr. Billings on April 30, 2002, July 30, 2002, and in May 2003. He went to the emergency room of St. Tammany Parish Hospital on May 12, 2002 and the emergency room of Lakeview Regional Medical Center on March 10, 2002, June 11, 2002, and December 9, 2002. All of these emergency room visits reflect that Mr. Hutchi-son received treatment for severe low back pain relative to his fall of October 17, 2001.
Dr. Robert Starns, a general practitioner whose practice includes the primary care and management of patients with disc disease, saw Mr. Hutchison on November 13, 2002 in connection with his attempt to get Medicaid benefits. Dr. Starns found Mr. Hutchison to be totally disabled from work. He causally related Mr. Hutchi-son’s inability to work to injuries sustained in the October 2001 work accident. He reached this conclusion based on the fact that Mr. Hutchison’s preexisting back' complaints did not prevent him from work prior to the accident, whereas he could no longer do any work after the accident.
At the trial on the merits on June 9, 2003, the WCJ heard live testimony from Mr. Hutchison, the employer’s nurse case manager, Angela Grundmeyer, and Deborah Segura, the employer’s adjuster. The deposition testimony of Dr. Robert Starns, Dr. Charles Billings, Dr. Donald Dietze and Dr. John Sweeney, along with medical records and expenses, prescription costs, and transportation costs were introduced into evidence. The employer also introduced into evidence Mr. Hutchison’s pre-employment examination form. After considering the testimony | fiof the witnesses and the exhibits introduced into evidence, the WCJ rendered judgment finding that Mr. Hutchison was entitled to temporary total disability benefits. She further found that that the employer was arbitrary and capricious in terminating Mr. Hutchison’s indemnity benefits and in refusing to authorize surgery and pay medical benefits. Accordingly, the WCJ awarded'Mr. Hutch-ison penalties and attorney fees.
On appeal, Aldworth raises six assignments of error. In the first three assignments, Aldworth argues that the WCJ erred in finding accident causing injury, awarding temporary total disability benefits and awarding continuing medical benefits and surgery for the October 2001 work accident.
The findings of fact reached by the WCJ in rendering her judgment included the following:
1. Claimant, Sidney Hutchison, was employed by Aldworth' on October 17, 2001.
2. Claimant was injured by accident during the course and scope of his employment on October 17, 2001.
3. The medical evidence is overwhelming that the claimant aggravated a preexisting back condition at work on October 17, 2001.
4. Claimant has a ninth (9th) grade education.
5. Claimant is entitled to the payment of temporary total disability benefits from May 2, 2002 through the present and continuing.
6. Claimant is entitled to the payment of all medical expenses, medication expenses, and transportation expenses arising from the accident.
*1057 7. Defendants did not reasonably controvert the claim.
|78. Defendants have been arbitrary and capricious herein, in their refusal to pay medical bills, medication expenses, transportation expenses, refusal to authorize the surgical procedure, and their refusal to pay indemnity benefits, and retraining or vocational rehabilitation.
9. Defendants’ undesirable conduct warrants the payment of multiple penalties and attorney fees for their arbitrary and capricious actions.
Case law is well-established that a court of appeal may not set aside a trial court’s or a jury’s findings of fact absent “manifest error” or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Factual findings in workers’ compensation eases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal, 96-2804 (La.7/1/97), 696 So.2d 551. The trial court’s factual findings of work-related disability will not be disturbed where the evidence before the trier of fact, which upon the latter’s reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings unless they are shown to be clearly wrong. Hulberth v. Boh Bros., 99-1187 (La.App. 4 Cir. 1/5/00), 751 So.2d 994.
In applying these principles to the case at bar, we find no error in the trial court’s findings that Mr. Hutchison sustained an injury within the course and scope of his employment with the defendant that entitles him to temporary total disability benefits and in awarding continuing medical benefits and surgery. The WCJ cited overwhelming medical evidence that Mr. Hutchison aggravated a preexisting back injury. Dr. Billings, the employee’s treating orthopedist, testified that Mr. Hutchison’s increased pain was related to his work accident. Although the employer argues that the doctor did not note any objective findings, Dr. Billings said that subjective pain complaints can be disabling and in the case of Mr. ^Hutchison, he could not return to work because of the increased pain. Dr. Billings further stated the work restrictions he had previously imposed on Mr. Hutchison were probably more severe with increased pain. Moreover, he related the cause of Mr. Hutchi-son’s condition to all of his previous injuries. Dr. Billings again offered surgery as an option to Mr. Hutchison. Mr. Hutchi-son elected the surgery option on March 26, 2002.
Dr. Dietze, the neurosurgeon who was the first specialist to treat him after his accident, testified that Mr. Hutchison’s disability was caused by the work accident of October 17, 2001. Dr. Dietze said that his opinion would not change as to causation, notwithstanding the fact that Mr. Hutchi-son had visited Dr. Billings on September 6, 2001 with back complaints. Dr. Dietze said the accident as recorded would predictably aggravate Mr. Hutchison’s condition.
As previously referenced herein, Dr. Robert Starns also found that Mr. Hutchi-son was totally disabled (crippled) as a result of his work injury. He reached that conclusion given the history of the fall, the fact that he had not been able to return to work since the fall and because he was hurting severely.
Aldworth contends that the employee’s disability is related solely to his documented preexisting back condition. However, a preexisting injury does not bar a claimant’s recovery, but a claimant must establish aggravation of preexisting condition by a preponderance of the evidence. Blanque v. City of New Orleans, 612 So.2d 948 (La.App. 4th Cir.1993). The deposition testimony of Dr. Billings, Dr. Dietze, *1058 and Dr. Starns, along with the medical records introduced by the claimant, clearly show that Mr. Hutchison’s back condition was aggravated by injuries sustained in this work accident.
|nWe therefore find that the WCJ’s findings of accident causing injury, and in awarding continuing medical benefits and surgery for the October 2001 accident are reasonable in light of the record in its entirety and should not be disturbed on appeal.
In its next assignment of error, Aldworth contends that the WCJ erred in denying the employer’s claim for forfeiture of benefits pursuant to La. R.S 23:1208. That statute makes it unlawful for any person to make willfully false statements for the purpose of obtaining workers’ compensation benefits. Aldworth alleges that the claimant made “false” statements by “indicating” to Dr. Dietze that he was not under active treatment for his back condition during the time leading up to his accident. However, Dr. Dietze’s records do not state that Mr. Hutchison affirmatively denied active treatment, but rather Dr. Dietze said he was not under the impression that Mr. Hutchison was actively seeing a physician.
Aldworth also claims that Mr. Hutchison provided false statements by alleging to Dr. Dietze that he never had pain in his legs prior to the accident and in only disclosing back problems from 1996 and in 1999, while omitting that his chronic back problems started in 1991. However, the evidence shows that Mr. Hutchison advised all of his medical providers who treated him after the work accident that he had preexisting back problems. Aid-worth does not put forth any evidence that any of these alleged false statements were made for the purpose of obtaining compensation benefits. In particular, Aldworth presents no evidence from any of the medical providers that their findings regarding Mr. Hutchison’s disability status and their opinion that the work accident aggravated Mr. Hutchison’s preexisting condition would have changed as a result of these 11 npurported false statements. Dr. Billings regarded Mr. Hutchison as truthful and Dr. Starns described him as genuine and cooperative.
Aldworth complains that Mr. Hutchison did not make a notation that he had a spine injury on his pre-employment physical examination form. Mr. Hutchi-son, who has a ninth grade education, testified at trial that he did not understand that a spinal injury meant back injury. Although Aldworth finds that explanation incredulous, the WCJ specifically found Mr. Hutchison to be a credible witness. Moreover, inasmuch as this statement was made prior to Mr. Hutchison’s work accident, it cannot be characterized as a statement made willfully for the purpose of receiving compensation benefits as contemplated by La. R.S. 23:1208. Whether a claimant forfeits his right to workers’ compensation benefits based on a false statement or misrepresentation is a question of fact that will not be disturbed on appeal unless the finding is clearly wrong or manifestly erroneous. Marler v. New Orleans Area Council, Boy Scouts of America, 01-1167 (La.App. 5 Cir. 3/13/02), 815 So.2d 131. In the instant matter, the trial judge did not find that Mr. Hutchison made false statements, but rather that Mr. Hutchison was a credible witness. Therefore, this assignment of error lacks merit.
In its fifth and sixth assignments of error, Aldworth argues that the WCJ erred in awarding penalties and attorney fees for Aldworth’s failure to pay medical benefits or indemnity benefits. As with Aldworth’s other assignments of error, the determination of whether an employer *1059 should be cast with penalties and attorney fees in a workers’ compensation case is essentially a question of fact, and the trial court’s findings shall not .be disturbed at the appellate level absent manifest error. Gross v. Maison Blanche, Inc., 98-2341 (La.App. 4 Cir. 4/21/99), 732 So.2d 147. However, penalties and attorney fees shall not be assessed if thej^claim is reasonably controverted. La. R.S. 23:1201(F)(2). A claim is reasonably controverted if the employer has sufficient factual and medical information to counter that presented by the claimant. Vallelungo v. City of New Orleans, 95-0264 (La.App. 4 Cir. 5/1/96), 673 So.2d 1292. In the instant case, Mr. Hutchison introduced ample evidence at trial to support the trial court’s findings of fact that the defendant’s conduct was arbitrary and capricious and that the defendant did not reasonably controvert this claim.
Aldworth primarily relied on a form prepared by its nurse case manager to terminate the claimant’s benefits. However, the findings indicated on the form were incomplete. The form that Dr. Billings signed after the March 25, 2002 meeting with the case manager related the need for continued treatment to Mr. Hutchison’s chronic, injury, not the injury of October 2001. The form also placed Mr. Hutchison at maximum medical improvement as of March 25, 2002. However, Dr. Billings testified that this form did not capture the entire picture of Mr. Hutchison’s condition. Dr. Billings said that he advised the case manager that Mr. Hutchison was at maximum medical improvement regarding nonoperative treatment and that he could attempt lighter, sedentary work activities provided his pain was under control. Surgery remained a treatment option. Further, the employer received a medical report from Dr. Billings advising that Mr. Hutchison’s symptoms were exacerbated by his accident of October 17, 2001 as documented in Mr. Hutchison’s follow-up office visit of March 26, 2002. The report also advised that surgical intervention remains an option in his pain control. (Mr. Hutchison.opted for surgery after this office visit).
In addition to Dr. Billings’ report, Aid-worth received other medical reports after it made the decision to terminate benefits. Aldworth received ^emergency room records and reports from Dr. Robert Starns advising that Mr. Hutchison remained in pain and required treatment arising out of injuries from the October 17, 2001 accident. Notwithstanding that information, Aldworth refused to resume benefits, pay medical benefits or authorize surgery. In Blanque v. City of New Orleans, 612 So.2d 948 (La.App. 4th Cir.1993), the court found that the claimant was entitled to recovery of statutory penalties and attorney fees where the employer terminated benefits based on the medical report of one doctor and ignored subsequent medical reports documenting the claimant’s disability. The court noted that the employer has an ongoing duty to Review medical reports concerning the injured employee’s disability, and may not deny or discontinue workers’ compensation- based on inconclusive medical reports. Blanque at 952. The award of statutory penalties and attorney fees was also upheld in Miller v. City of New Orleans, 95-1005 (La.App. 4 Cir. 12/14/95), 665 So.2d 1293. In that case, benefits were terminated based on the employer’s contention that the claimant’s disability related to his preexisting back condition, rather than injury from his work accident. The employer relied on the findings of one doctor. However, the court noted that the totality of the medical evidence supported that the claimant’s inability to work arose from his work injury. The court concluded that the employer breached the Blanque standard and *1060 breached its on-going duty to review medical reports concerning the injured employee’s disability, and to refrain from denying or' discontinuing benefits based on inconclusive medical reports. Miller at 1299.
In the instant case, Aldworth also said it relied on the opinion of Dr. John Sweeney, the orthopedist retained by Aldworth for a second opinion, to support its decision to terminate benefits. Dr. Sweeney said that Mr. Hutchison’s | ^disability was related to his preexisting complaints. However, Dr. Sweeney did not examine Mr. Hutchison until after the employer had already terminated benefits. Moreover, the WCJ characterized Dr. Sweeney’s testimony as evasive and contradictory.
In applying the Blanque standard to the case at bar, we find that the employer’s decision to controvert claimant’s entitlement to benefits based on an inconclusive form and a medical report from Dr. Sweeney, who saw the claimant on only one occasion, was not reasonable. Accordingly, the WCJ did not err in awarding penalties and attorney fees.
However, we must still consider whether the amount of penalties and attorney fees assessed were properly awarded pursuant to La. R.S. 23:1201. The WCJ awarded $2000 for the employer’s failure to pay medication, medical, and transportation expenses; $2000 for the failure to authorize surgery; $2000 for the failure to pay indemnity benefits; and $6000 in attorney fees. Penalties and attorney fees were awarded pursuant to La. R.S. 23:1201(A), (B), (C), (D), (E), and (F) that provide for the assessment of penalties and attorney fees for failure to pay timely benefits, medical expenses and the failure to authorize. The employer argues that because it discontinued payment of benefits, rather than failed to timely pay benefits, the WCJ should not have assessed penalties. The employer cites La. R.S. 23:1201.2 which provides that an employee is liable for the payment of attorney fees only when the employer’s discontinuance of benefits is found to be arbitrary and capricious. In the instant case, the employer discontinued benefits on May 2, 2002.
The Supreme Court ruled in Chelette v. Riverwood International USA, Inc., 2003-1483 (La.10/17/03), 858 So.2d 412 that when the case involves 114discontinuation of benefits rather than a failure to provide benefits, La. R.S. 23: 1201.2, not La. R.S. 23:1201(F) applies. The instant case involves a discontinuation of benefits, rather than a failure to timely pay benefits; therefore, we find that the trial court erred in awarding $2000 in penalties for the employer’s failure to pay indemnity benefits. Although La. R.S. 23:1201.2 has now been repealed and presently La. R.S. 23:1201(1) allows for the assessment of penalties and attorney fees for the discontinuance of benefits, that statute was not in effect at the time of the claimant’s accident. The workers’ compensation penalty provision in effect at the time of claimant’s injury is the provision that applies to the claim for benefits arising out of injury. See Cook v. Kaldi’s Coffee House, 97-0979 (La.App. 4 Cir. 1/28/98), 706 So.2d 1052.
Aldworth’s failure to authorize surgery and to make timely payment of medical expenses and transportation expenses is controlled by La. R.S. 23:1201. In Authement v. Shappert Engineering, 2002-1631, p. 12 (La.2/25/03), 840 So.2d 1181, 1189 the Court held that the employer’s failure to authorize medical treatment equates to failure to provide benefits in accordance with workers’ compensation statute providing that failure to provide payment shall result in the assessment of penalty and reasonable attor *1061 ney fee. La. R.S. 23:1201(F). In this matter, the employer failed to authorize recommended surgery. Under La. R.S. 23:1201, medical benefits are payable within sixty days after the employer receives notice. The evidence introduced at trial shows the employer failed to timely pay medical expenses, medication costs and transportation expenses incurred pri- or to its decision to discontinue benefits on May 2, 2003. Thus, the WCJ properly awarded penalties of $2000 for the failure to authorize surgery and $2000 for the failure to pay medical expenses, medication expenses and transportation costs.
|1ñAs part of its argument that attorney fees and penalties should not have been awarded, Aldworth maintains that the WCJ should not have assessed penalties and attorney fees against the employer because the employer was not the party at fault for terminating indemnity and medical benefits. We disagree. La. R.S. 23:1201(F) states that penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. In this case, the employer’s and the insurer’s adjusting company, ESIS, made the decision to terminate benefits. The insurer was not a named defendant. Thus, the trial court was within its authority to assess penalties and attorney fees against the employer.
Some of the factors taken into account by a WCJ in fixing the amount of statutory attorney fees are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the claimant, and the amount of time the attorney devoted to the case. McCarroll v. Airport Shuttle, Inc., 2000-1123 (La.11/28/00), 773 So.2d 694. In applying these factors to the case at bar, the WCJ did not abuse her discretion in awarding attorney fees of $6000.
For the foregoing reasons, we reverse the award of penalties for the employer’s failure to pay indemnity benefits, and otherwise affirm the judgment of the Workers’ Compensation Judge.
AFFIRMED IN PART; REVERSED IN PART.