DAPHNE REISSLAND      *      NO. 2025-CA-0379

VERSUS      *

VALLUZZO COMPANIES,      *      COURT OF APPEAL
LLC
     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 23-04315, DISTRICT "7"
Honorable Heather Fairchild, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge
Monique G. Morial)

Timothy E. Benedetto
WORKERS' COMPENSATION, LLC
3045 Ridgelake Ave., Suite 100
Metairie, LA 70002

           COUNSEL FOR PLAINTIFF/APPELLANT, Daphne Reissland

Trenton J. Oubre
Terrel A. Thomas
Charles C. Szeszycki
BREAZEALE, SACHSE & WILSON, LLP
One American Place
23rd Floor
P.O. Box 3197
Baton Rouge, LA 70821

           COUNSEL FOR DEFENDANT/APPELLEE, Valluzzo Companies, LLC

**REVERSED IN PART; VACATED IN PART; REMANDED WITH
INSTRUCTIONS; ANSWER TO APPEAL DENIED
DECEMBER 29, 2025**

This is a workers' compensation case. Employee-appellant is Daphne Reissland ("Ms. Reissland"), and employer-appellee is Valluzzo Companies, LLC ("Valluzzo"). Ms. Reissland appeals the judgment issued by the workers' compensation judge ("WCJ")[1] on December 5, 2024. In that judgment, in pertinent part, the WCJ found Ms. Reissland was a part-time employee when she worked for Valluzzo and sustained a workplace injury; and Ms. Reissland assigns error to the finding that she was a part-time employee as opposed to a full-time employee. Further, the WCJ held Ms. Reissland proved she experienced a work place accident; she experienced a work-related injury; she sustained injuries related to the work accident; and a causal connection between the work accident and her injuries. However, the WCJ found Ms. Reissland made false statements for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208, such that she forfeited her right to benefits and would be required to pay restitution to Valluzzo. In this latter regard, the WCJ issued another judgment on January 13, 2025, in which it delineated the amount Ms. Reissland owed Valluzzo in restitution and ordered Ms. Reissland to pay a civil penalty pursuant to La. R.S.

---

[1] Throughout this Opinion, "WCJ" will refer to the particular workers' compensation judge who rendered the decision in this matter.

23:1208(D). Ms. Reissland assigns error to the WCJ's finding that she made misstatements in violation of La. R.S. 23:1208 such that she forfeited her right to benefits and must pay restitution. In the alternative, Ms. Reissland assigns error to the WCJ's restitution calculation.

In addition to asserting assignments of error in its appellee brief, Valluzzo filed an "Answer . . . to the Appeal of Appellant" ("Answer"). Therein, Valluzzo seeks review of the WCJ's failure to award it all attorney's fees incurred pursuant to La. R.S. 23:1208(C)(4); the total requested attorney's fees and costs pursuant to La. R.S. 23:1310.9; judicial interest on the restitution award pursuant to La. R.S. 23:1201.3; and additional costs, including penalties and attorney's fees, pursuant to La. R.S. 23:1201(G) for Ms. Reissland's failure to pay any of the amount ordered in the restitution judgment. Additionally, Valluzzo asserts the WCJ erred in certain parts of the December 5, 2024 judgment, specifically in finding that Ms. Reissland proved the alleged workplace accident of May 4, 2023; proved she sustained a work-related injury; proved she sustained injuries related to the work accident; and proved a causal connection between the accident and her injuries. Valluzzo also contends the WCJ erred in the December 5, 2024 judgment in finding Valluzzo did not prove entitlement to the intoxication presumption due to Ms. Reissland's delay in submitting to its drug testing request. Further, Valluzzo asserts the WCJ erred in finding Valluzzo failed to prove Ms. Reissland's intoxication was the cause of her work accident.

For the following reasons, we reverse the WCJ's December 5, 2024 judgment in part; vacate the January 13, 2025 judgment; and remand this matter to the WCJ with instructions. We deny the requests by Valluzzo in its Answer.

## FACTUAL AND PROCEDURAL HISTORY

## <u>Incident, Early Treatment, and Initiation of Benefits</u>

According to Ms. Reissland, she injured her left hip on May 4, 2023, while employed by Valluzzo at a McDonald's located in Meraux, Louisiana. Describing the accident and injury in the Disputed Claim for Compensation - Form 1008 she ultimately filed, Ms. Reissland stated that "[w]hile in the course and scope of her employment . . . , [she] injured her left hip while throwing away garbage." Based on Ms. Reissland's account of the incident in the record, she injured herself while attempting to lift a bag of garbage that was heavier than anticipated because, unbeknownst to her, another employee had placed liquids and grease in it. Additionally, Ms. Reissland explained she was unable to perform her job duties the day after the incident, May 5, 2023, and left her shift early, whereupon she immediately sought treatment with her primary care physician, Dr. Lagarde-May ("Dr. May") at DePaul Community Health Center.

On June 6, 2023, Dr. Kevin Johnson ("Dr. Johnson") evaluated Ms. Reissland and noted complaints of pain in her lower back, left hip, and left leg. Dr. Johnson recommended Ms. Reissland undergo conservative care and rendered her totally disabled from work. Thereafter, on June 19, 2023, Valluzzo instituted Ms. Reissland's indemnity benefits, ultimately determining that Ms. Reissland was entitled to temporary total disability benefits in the amount of $275.02 per week as calculated based on an average weekly wage of $412.53 per week.

Subsequently, on June 23, 2023, Dr. Nicholas DiGerolamo ("Dr. DiGerolamo") evaluated Ms. Reissland, and he also noted that she complained of pain in her lower back, left hip, and left leg, with pain centralized in her left lower back area. Then, Dr. Johnson evaluated Ms. Reissland again on July 25, 2023, and

3

likewise noted her complaints of pain in her lower back, left hip, and left leg. Dr. Johnson maintained his designation of Ms. Reissland as totally disabled from work, recommended that she continue conservative care, and ordered a lumbar MRI.

On November 6, 2023, orthopedic spine specialist Dr. Marco Rodriguez ("Dr. Rodriguez") evaluated Ms. Reissland, reviewed the MRI taken of her spine, and reported two bulging discs and one herniated disc in her lumbar spine. Given Ms. Reissland's continued pain, Dr. Rodriguez recommended she undergo epidural steroid injections and continued her total disability restrictions. Dr. Rodriguez requested authorization for continued care on November 15, 2023, but Valluzzo denied the request based on a "causality issue." On November 20, 2023, Dr. Rodriguez also requested authorization to perform lumbar transforaminal injections, but Valluzzo denied this too on the basis of a "question of causality."

## Medical Authorization Forms

On June 22, 2023, Valluzzo forwarded several release authorization forms to Ms. Reissland, including a Health Insurance Portability and Accountability Act ("HIPAA") authorization. Approximately one month later, Ms. Reissland signed the HIPPA authorization thereby allowing Valluzzo's claims adjuster to access her medical records.

Thereafter, on August 11, 2023, Valluzzo contacted Ms. Reissland and asked her to execute another HIPPA authorization in favor of its counsel. Ms. Reissland refused to execute the additional authorizations on the grounds that her claim was not yet in litigation and that she had already signed the prior HIPPA authorization. In a subsequent attempt by Valluzzo to get Ms. Reissland to sign the HIPPA authorization in favor of its counsel, Valluzzo sent a cover letter which

stated that Valluzzo's counsel was "the authorized designee of [Valluzzo] to procure records, reports, pathology, radiology bills and all other documents or materials specified in requests submitted on behalf of [Valluzzo]." In response to this letter, Ms. Reissland revoked all prior signed authorizations. On August 17, 2023, Valluzzo terminated Ms. Reissland's indemnity benefits due to her "hindrance and arbitrary actions in blocking all medical records discovery and" in "denying [Valluzzo] from being able to obtain all relevant medical records . . . in further investigation and [evaluation of] this claim." Ms. Reissland subsequently re-executed a HIPPA authorization on September 1, 2023, whereupon Valluzzo reinstituted her indemnity benefits on September 13, 2023.

**Disputed Claim for Compensation**

Before Valluzzo reinstituted her benefits, however, on August 29, 2023, Ms. Reissland filed her Disputed Claim for Compensation - Form 1008 ("Claim Form"). On the Claim Form, Ms. Reissland noted Valluzzo terminated her workers' compensation benefits on August 17, 2023. Ms. Reissland requested, in pertinent part:

> Any and all equitable relief owed, including but not limited to entitlement to awards of penalties and attorney's fees in accordance with La. R.S. 23:1201 et seq.; entitlement to reimbursement of costs in accordance with La. R.S. 23:1310.9; entitlement to judicial interest on all amounts awarded including but not limited to awards of penalties, attorney's fees and costs.

In subsequent pleadings, Ms. Reissland also requested judicial interest on penalties, attorney's fees, and costs.

Though Ms. Reissland's Claim Form listed her injured body part as her left hip, during the course of this dispute, she ultimately complained of lower back problems too and amended her claim to include that complaint. Additionally,

5

throughout the course of the proceedings, Ms. Reissland maintained that she was a full-time employee and that Valluzzo should have classified her as such in calculating her benefits. According to Ms. Reissland's deposition testimony, her supervisor informed her that she would be a full-time employee.

**Answer and Request for Preliminary Determination Hearing**

On September 20, 2023, Valluzzo timely filed its Answer and, in pertinent part, requested a preliminary determination hearing ("PDH") to determine whether Ms. Reissland was entitled to continue receiving benefits. In this regard, Valluzzo explained that Dr. Douglas Lurie ("Dr. Lurie") examined Ms. Reissland on July 25, 2023, and was "not able to assign any type of causation of [Ms. Reissland's] current complaints in light of the strong nonorganic overlay," and that she "should return to regular duty immediately."

Ms. Reissland opposed Valluzzo's request for a PDH in a Motion to Strike Request for PDH, asserting that Valluzzo had not offered evidence that it complied with all of the provisions of La. R.S. 23:1201.1(A) that are a prerequisite for any request for a PDH. Specifically, Ms. Reissland claimed that Valluzzo did not show that it sent the Notice of Initial Payment (LWC Form 1002) to her on the same day that the first payment of compensation was made. Though we need not delineate the specifics of same, it is important to note that the WCJ eventually granted Valluzzo's request for a PDH and conducted one.

In pertinent part, in its Answer, Valluzzo also contended Ms. Reissland delayed properly and timely reporting her work incident thereby thwarting the administration of a prompt drug test immediately after the alleged accident. According to Valluzzo, by failing to allow for prompt drug screening, Ms. Reissland forfeited all rights to compensation pursuant to La. R.S. 23:1124.

6

Valluzzo also asserted that La. R.S. 23:1081(7)(b) established a presumption that Ms. Reissland was intoxicated at the time of the accident in light of her failure to submit to a timely drug screening.

**<u>Termination of Benefits</u>**

On January 10, 2024, Valluzzo terminated Ms. Reissland's indemnity benefits on the grounds that she committed fraud pursuant to La. R.S. 23:1208 by misrepresenting her prior and post-accident medical treatment and history, alleged disabilities, condition, and basis and need for medical care. Valluzzo further contended Ms. Reissland committed fraud pursuant to La. R.S. 23:1208.1 by making willful misrepresentations and false statements regarding her true and accurate medical history, pre-accident history, medications, and lost time from work. Valluzzo also denied all requests for future medical treatment. Additionally, Valluzzo filed a Supplemental and Amending Answer, as well as a Reconventional Demand, with these same allegations. In its Reconventional Demand, Valluzzo contended it was entitled to restitution and reimbursement in light of Ms. Reissland having committed fraud and having made willful misrepresentations. In pertinent part, Ms. Reissland had already submitted to a deposition, during which she denied having a specific history of back pain, back problems, or treatment for back pain and back problems; but her medical records revealed otherwise. Valluzzo ultimately submitted with one of its pleadings a November 3, 2023 supplemental report from Dr. Lurie. Therein, Dr. Lurie opined that Ms. Reissland's history was inaccurate, noting that she did in fact have a prior history of back problems and there was no record of her being treated by Dr. May on the day after the alleged incident contrary to Ms. Reissland's report.

**Dr. Marco Rodriguez's Deposition**

On March 22, 2024, Ms. Reissland deposed Dr. Rodriguez. In his deposition, Dr. Rodriguez noted that Ms. Reissland's reason for her initial appointment with him on November 6, 2024, was "cervical, thoracic, and lumbar" pain. According to Dr. Rodriguez, Ms. Reissland denied having any history of low back pain before her injury, and he did not know that Ms. Reissland had prior diagnoses of lumbar radiculopathy. Nevertheless, Dr. Rodriguez testified he would not change his opinion that Ms. Reissland began to experience left leg radiculopathy as a result of her May 4, 2023 work incident.

**Trial on the Merits**

On October 16, 2024, the WCJ held a trial on the merits. Valluzzo submitted the transcript of Dr. May's August 9, 2024 deposition as one of its exhibits. Therein, Dr. May denied having seen Ms. Reissland on May 5, 2023, and noted the absence of a record for a visit on that date. Dr. May also testified that she had diagnosed Ms. Reissland with lumbar radiculopathy on multiple occasions prior to her alleged workplace accident and explained the diagnosis to Ms. Reissland. Additionally, the WCJ heard testimony from Lauren Sulik ("Ms. Sulik") and Ms. Reissland.

*Ms. Sulik's Testimony*

Regarding the calculation of Ms. Reissland's average weekly wage based on average hours worked, Ms. Sulik, Valluzzo's claims adjuster, testified that she calculated it using the part-time employee classification for Ms. Reissland. Ms. Sulik admitted that nothing on Ms. Reissland's pay stubs directly stated that she was a part-time employee; however, Ms. Sulik noted the "job code" listed on Ms. Reissland's pay stubs was "job code 100," which indicated Ms. Reissland was a

8

"crew member." As explained by Ms. Sulik, all crew members are considered part-time employees. Ms. Sulik further explained that although no document specifically indicated that Ms. Reissland was classified as a part-time employee, only salaried managers at Valluzzo are full-time. According to Ms. Sulik, the part-time/full-time distinctions between crew members and salaried managers is common knowledge, but she could not refer to any location where this distinction was in writing.

Ms. Sulik added that the Valluzzo policy handbook specifies that crew members are not guaranteed a full-time schedule but can be given more hours the longer they have been employed and after they have proven their abilities. Ms. Sulik stated she used both the policy handbook and Ms. Reissland's status as a crew member to determine her average weekly wage. Valluzzo submitted the policy handbook as one of its exhibits. In pertinent part, it defines part-time employee as "those who are not assigned to a temporary or introductory status and who are regularly scheduled to work less than the full-time work schedule." (We also note that when asked during a deposition whether Ms. Sulik had any written acknowledgement that Ms. Reissland knowingly accepted part-time employment, Ms. Sulik responded, "Written? No, not to my knowledge.")

### Ms. Reissland's Testimony

Ms. Reissland testified she sought examination from Dr. May on the day after her alleged workplace accident and informed her other doctors about this visit with Dr. May. When asked whether Dr. May had previously diagnosed her with lumbar radiculopathy prior to her work accident, Ms. Reissland answered "no," explaining that she had never heard of that diagnosis until her own counsel mentioned it to her during the proceedings in this matter and had specifically never

heard that diagnosis from Dr. May. Ms. Reissland testified that she had never been diagnosed with or sought treatment for lumbar radiculopathy; did not know what the condition meant; and had never received an explanation regarding the diagnosis from Dr. May. Further, Ms. Reissland then testified that she still did not know what lumbar radiculopathy was and that she did not understand why she continued to receive questions about back pain because it was her hip that she injured in the workplace accident, not her back. Additionally, Ms. Reissland testified that she did not remember reporting back pain to Dr. May prior to the workplace accident, and Ms. Reissland stated she did not have a history of low back pain. Ms. Reissland also testified that her pain from the incident at work was different from any pain she had previously experienced.

***December 5, 2024 Judgment***

Following the trial on the merits, the WCJ signed a judgment on December 5, 2024, which stated, in pertinent part:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Court finds that claimant, Daphne Reissland, met the burden of proof necessary to establish the alleged work place accident of May 4, 2023.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, met the burden of proof necessary to establish a work related injury.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, met her burden of proof to show that she sustained injuries related to the work accident.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, is a part-time employee, with an average weekly wage of $412.52 and a corresponding TTD rate of $275.02.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Valluzzo Companies, LLC, is not entitled to the intoxication presumption due to the delay of the drug testing request.

10

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Valluzzo Companies, LLC, failed to prove that claimant's intoxication was the cause of her work accident.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the suspension of benefits due to the refusal by claimant and claimant's counsel to provide medical release authorizations is moot as the reinstatement of benefits and retroactive payment has already been paid in full.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Valluzzo Companies, LLC, failed to prove that claimant committed fraud pursuant to La. R.S. 23:1208.1.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, made false statements for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, has forfeited her rights to workers' compensation benefits due to her violations of La. R.S. 23:1208.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that claimant, Daphne Reissland, failed to meet the burden of proof necessary to establish a violation of La. R.S. 23:1208 against defendant, Valluzzo Companies, LLC.

IT IS FINALLY ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of Defendant and against Claimant as set forth herein. The matter is set for a hearing to determine restitution costs on behalf of the defendant on January 6, 2025, at 9:00 a.m.

The record establishes Valluzzo continued paying Ms. Reissland's indemnity benefits until December 10, 2024, at which time they suspended her benefits in light of the WCJ's December 5, 2024 judgment.

***January 13, 2025 Judgment***

Subsequently, on January 6, 2025, the WCJ held a restitution hearing, and found that Valluzzo did not have the requisite knowledge that Ms. Reissland's made false statements for the purpose of obtaining benefits until December 5, 2024

11

(the date of the WCJ's prior judgment). On January 13, 2025, the WCJ issued another judgment, which stated, in pertinent part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claimant is ordered, pursuant to La. R.S. 23:1208(C)(4) and (D), to pay restitution for benefits claimed or payments obtained for the cost or value of indemnity benefits, the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation as follows:

Restitution in the amount of $21,490.86 in indemnity benefits,

Restitution in the amount of $13,076.05 in health care benefits, and

Restitution in the amount of $5,158.94 in reasonable costs of investigation and litigation.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claimant is ordered, pursuant to La. R.S. 23:1208(D), to pay a civil penalty in the amount of $5,000.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claimant shall pay this civil penalty directly to the employer in accordance with the holding in Yarnell Ice Cream Company v. Allen, 759 So.2d 1066 (La. App. 2 Cir. 5/10/00).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that matter [sic] is dismissed with prejudice.

Ms. Reissland's timely appeal to this Court followed, and Valluzzo timely filed its Answer with this Court.

## ASSIGNMENTS OF ERROR AND ANSWER

In her brief to this Court, Ms. Reissland asserts five assignments of error. Specifically, she contends:

1. The [WCJ] was manifestly erroneous in finding [Ms.] Reissland committed fraud pursuant to La. R.S. 23:1208.

2. In the alternative, the [WCJ] abused its discretion in awarding restitution under La. R.S. 23:1208 through the date of its December 5, 2024 judgment.

12

3. The [WCJ] committed legal error in calculating [Ms.] Reissland's indemnity benefits based on her classification as a "part[-]time" worker.

4. The [WCJ] abused its discretion in failing to award multiple penalties and attorney's fees pursuant to La. R.S. 23:1201(I) and/or (F).

5. The [WCJ] committed legal error in failing to award [Ms.] Reissland cost reimbursement pursuant to La. R.S. 23:1310.9 and failing to award judicial interest on all penalties, costs, and attorney's fees awarded.

Valluzzo asserts three assignments of error in its brief to this Court.

Specifically, Valluzzo contends:

1. The [WCJ] committed manifest error in the failure to award [Valluzzo] all attorney's fees incurred by [Valluzzo] as established in evidence and made part of the Trial Court record, to be included as part of the Restitution Judgment as "reasonable costs of investigation and litigation" in the Judgment rendered on January 6, 2025, pursuant to La. R.S. 23:1208.

2. The [WCJ] committed manifest error in its failure to award all requested attorney's fees and the total cost of the proceedings, pursuant to La. R.S. 23:1310.9, plus judicial interest on the entire restitution award pursuant to La. R.S. 23:1201.3 to [Valluzzo] against [Ms. Reissland] in the Restitution Judgment rendered on January 6, 2025.

3. The [WCJ's] Restitution Judgment of January 6, 2025, should be modified and revised to award [Valluzzo] all additional damages and costs, including penalties and attorney's fees upon the running of all deadlines, pursuant to La. R.S. 23:1201(G).

Additionally, Valluzzo filed an Answer with this Court. In its Answer, Valluzzo prays for and requests the following relief:

[1]. That the [WCJ's] [j]udgment of January 6, 2025, appealed from by [Ms. Reissland] be modified, revised and amended, to expressly award all requested attorney's fees and the total costs and expenses of these proceedings and all recoverable amounts with legal interest to [Valluzzo] pursuant to La. R.S. 23:1208(C)(4) and (D).

13

[2].   That the Trial Court Judgment of January 6, 2025, appealed from by [Ms. Reissland] be modified, revised and amended to award all attorney's fees and costs and all recoverable amounts with legal interest to [Valluzzo], on grounds that [Ms. Reissland's] claims were not brought on reasonable ground pursuant to La. R.S. 23:1310.9.

[3].   That this Honorable Court award judicial interest on all sums owed to [Valluzzo], by [Ms. Reissland], pursuant to La. R.S. 23:1201.3.

[4].   That this Honorable Court award all further costs, expenses, and attorney's fees incurred in responding to this appeal by [Ms. Reissland]. Through its response, [Valluzzo's] counsel has and will exercise additional work, effort, and skill in answering and responding to this appeal considering all costs, briefs, pleadings and oral arguments herein; and based upon [Valluzzo's] efforts, [Ms. Reissland] must pay the costs of this additional effort to [Valluzzo] pursuant to La. C.C.P. Art. 2133(A).

[5].   Except as specifically set forth in the Answer by [Valluzzo] herein, [Valluzzo] prays that the Judgment of the Trial Court rendered on December 5, 2024, be specifically affirmed and approved, subject to the specific demands, modifications and revisions set forth in [Valluzzo's] Answer herein; That the Judgment of the Trial Court rendered in Open Court on January 6, 2025, and signed as a Written Judgment on January 13, 2025, granting restitution of benefits be affirmed and approved herein, except for the specific demands, modifications, revisions, as set forth in the Answer by [Valluzzo] herein; and

[6].   That [Ms. Reissland] be condemned to pay all costs and all expenses and applicable recoverable amounts of this appeal to [Valluzzo].

We begin our discussion with Ms. Reissland's assignments of error before resolving Valluzzo's assignments of error and the requests in Valluzzo's Answer.

**DISCUSSION**

**Ms. Reissland's Assignments of Error**

***Assignment of Error Number One: The WCJ's Finding Ms. Reissland Violated La. R.S. 23:1208 and Forfeited Her Right to Benefits***

In her first assignment of error, Ms. Reissland asserts the WCJ "was manifestly erroneous in finding [she] committed fraud pursuant to La. R.S. 23:1208." At the outset, Ms. Reissland contends she did not make any false statements. Nonetheless, Ms. Reissland further contends that to the extent she made "false" statements, she did not make them "willfully." That is, Ms. Reissland argues it "was clearly not the case" that she "**intentionally** misrepresented her past medical history . . . and . . . withheld . . . information . . . for the purpose of obtaining benefits." Additionally, Ms. Reissland argues that "[t]o the extent [she] made 'false' statements," they "were inadvertent and inconsequential." In this regard, she cites to jurisprudence for the proposition that if treating physicians do not change their opinions about the causation element of a workers' compensation claimant's claim, then the misrepresentation was inadvertent and inconsequential.

Countering, Valluzo asserts the WCJ "made a correct factual finding, based on all testimony and evidence presented at trial, that [Ms. Reissland], made willful misrepresentations and committed fraud pursuant to La. R.S. 23:1208 and forfeited all benefits." In particular, Valluzzo argues that "[c]ontrary to [her] testimony, [Ms. Reissland's] prior medical records reveal that she has an extensive past medical history of low back pain and treatment since at least 2009 through 2023." Additionally, Valluzzo asserts Ms. Reissland made "significant false statements" regarding her "medical evaluations and treatment after the accident with Dr. May at Depaul Community Health Clinic."

The WCJ ruled Ms. Reissland forfeited her rights to workers' compensation benefits due to her violation of La. R.S. 23:1208. Louisiana Revised Statutes 23:1208(A) states that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." The statute delineates criminal and civil penalties a workers' compensation judge may assess when an employee violates La. R.S. 23:1208(A). Additionally, if a violation of La. R.S. 23:1208(A) occurs, the "employee . . . shall . . . forfeit any right to compensation benefits under this Chapter." La. R.S. 23:1208(E). Disqualification from benefits under La. R.S. 23:1208 occurs when there is "1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers' compensation benefits." *Baker v. Harrah's*, 2015-0229, p. 32 (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 399 (citing *Resweber v. Haroil Constr. Co.*, 1994-2708, 3138, p. 7 (La. 9/5/95), 660 So.2d 7, 12).

Because "[t]he issue of whether an employee has forfeited her rights to benefits is a factual determination," the appellate court "should not . . . disturb[]" that finding "on appeal absent manifest error." *Hebert v. Fresh Market, Inc.*, 2019-0412, p. 19 (La. App. 4 Cir. 9/18/19), 280 So.3d 756, 771 (citing *Baker*, 2015-0229, p. 32 (La. App. 4 Cir. 3/9/16), 190 So.3d 379, 399). Under that standard of review, "the appellate court determines whether the trier of fact's conclusion was reasonable, not whether the trier of fact was right or wrong." *Safford v. New Orleans Fire Dep't*, 2023-0495, p. 23 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 928 (citing *Thibodaux v. Grand Isle Shipyard*, 2016-0583, p. 6 (La. App. 4 Cir. 12/21/16), 207 So.3d 459, 464). Nevertheless, "if legal error interdicts the fact-

finding process in a workers' compensation proceeding, then the appellate court applies the *de novo* standard of review instead." *Id.* (internal quotation marks omitted) (quoting *Thibodaux*, 2016-0583, p. 6, 207 So.3d at 465). As this Court has explained, "Statutory forfeiture is a harsh remedy and must be strictly construed." *Hebert*, 2019-0412, p. 19, 280 So.3d at 771 (citing *Baker*, 2015-0229, p. 32, 190 So.3d at 399). Therefore, an "inadvertent or inconsequential statement[] will not give rise to a finding of a willful misstatement, triggering statutory penalties." *Id.*

In an Opinion issued by this Court, *Hutchison v. Aldworth Co.*, the focus, in pertinent part, was on whether the medical providers' opinions as to the worker's injury would change upon learning about the worker's misstatements regarding prior complaints to the body part allegedly injured in the workplace accident. 2004-0024, pp. 9-10 (La. App. 4 Cir. 11/10/04), 888 So.2d 1052, 1058. This Court found the employer had "not put forth any evidence that any of [the employee's] alleged false statements were made for the purpose of obtaining compensation benefits." *Id.* at p. 9, 888 So.2d at 1058. Specifically, this Court noted the employer "present[ed] no evidence from any of the medical providers that their findings regarding [the employee's] disability status and their opinion that the work accident aggravated [his] preexisting condition would have changed as a result of these purported false statements." *Id.* at pp. 9-10, 888 So.2d at 1058. Accordingly, this Court affirmed the workers' compensation judge's denial of the employer's claim for forfeiture of benefits pursuant to La. R.S 23:1208. *Id.* at p. 10, 888 So.2d at 1058. Similarly, in *Ebarb v. Boise Cascade Co.*, the Louisiana Third Circuit Court of Appeal ("Third Circuit") found no manifest error in the workers' compensation judge's denial of the employer's La. R.S. 12:1208 fraud defense as it related to the employee's lower back claim. 2016-94, p. 19 (La. App. 3 Cir.

7/13/16), 202 So.3d 1087, 1100. The Third Circuit noted that "all of the physicians found that [the employee] suffered at least a sprain or a strain of her lower back as a result of her March 26, 2012 work-related accident." *Id.* Additionally, the Third Circuit pointed out that one of the doctors "admitted that while he would consider any prior medical records in reaching an opinion on causation, he denied that he would automatically change his opinion if presented with medical records evidencing [the employee] had prior lower back complaints." *Id.*

In the matter *sub judice*, we find the WCJ erred in failing to consider the effect—or lack thereof—of Ms. Reissland's alleged misstatements and thus failed to consider whether they were inadvertent or inconsequential. As in *Hutchison* and *Ebarb*, we likewise note the absence of evidence from any of the medical providers that their opinion about Ms. Reissland's injury would change based on her alleged misstatements about her prior back pain and problems, as well as her history of treatment for back pain and problems. In fact, Dr. Rodriguez opined Ms. Reissland sustained an injury related to her workplace accident and suffered from left leg radiculopathy after the accident. Dr. Rodriguez stated that even upon learning Ms. Reissland had prior back pain and problems, this did not change his opinion. Additionally, Dr. Rodriguez characterized Ms. Reissland's post-accident pain as "a completely new issue." In his supplemental report, Dr. Lurie merely found that Ms. Reissland misstated her history of back pain and problems based on her medical records but did not mention how or if this affected his diagnosis.

Similarly, Valluzzo contends Ms. Reissland misrepresented her treatment history when she claimed she saw Dr. May on the day after the accident because Dr. May had no record of a visit for that date. Again, the issue is whether this alleged misstatement changed any of the medical providers' opinions. Though

18

seeking treatment immediately following the accident might have bolstered Ms. Reissland's claim that she suffered a workplace injury the day prior, none of the medical providers stated their opinion would change upon learning that Ms. Reissland did not in fact see Dr. May the day after the accident. Accordingly, we reverse the WCJ's December 5, 2024 judgment insofar as it held Ms. Reissland violated La. R.S. 23:1208 and forfeited her right to workers' compensation benefits.

Further, we note that La. R.S. 23:1201.3(A) provides:

If payment of compensation or an installment payment of compensation due under the terms of an award, except in case of appeals from an award, is not made within ten days after the same is due by the employer or insurance carrier liable therefor, the workers' compensation judge may order a certified copy of the award to be filed in the office of the clerk of court of any parish, which award whether accumulative or lump sum, when recorded in the mortgage records, shall be a judicial mortgage as provided in Civil Code Article 3299. Any compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction. The interest rate shall be fixed at the rate in effect on the date the claim for benefits was filed with the office of workers' compensation administration.

As explained by the Louisiana Fifth Circuit Court of Appeal, "Because the language of [La. R.S. 23:101.3(A)] is mandatory, an award of legal interest in workers' compensation cases is not discretionary with the court, as the interest attaches automatically until the judgment is satisfied, whether prayed for in the petition or mentioned in the judgment." *Phillips v. Joseph Mgmt. Servs., Inc.*, 2003-715, p. 13 (La. App. 5 Cir. 11/12/03), 861 So.2d 625, 634. *See also* La. R.S. 1:3 (stating that "[t]he word 'shall' is mandatory and the word 'may' is permissive"). Thus, Ms. Reissland is entitled to interest from the date compensation was due and until the date of satisfaction per La. R.S. 23:1201.3(A).

19

***Assignment of Error Number Two: The Award of Restitution under La. R.S. 23:1208 through the date of the December 5, 2024 Judgment***

Next, and in the alternative, Ms. Reissland asserts the WCJ abused its discretion in awarding restitution pursuant to La. R.S. 23:1208 through the date of its December 5, 2024 judgment. Having reversed the finding in the WCJ's December 5, 2024 judgment that Ms. Reissland violated La. R.S. 23:1208 and forfeited her right to benefits, we also necessarily vacate the WCJ's January 13, 2025 restitution judgment, which ordered Ms. Reissland to reimburse the benefits she received and to pay a penalty. This assignment of error as is now moot.

***Assignment of Error Number Three: The Calculation of Ms. Reissland's Indemnity Benefits Based on Her Classification as a "Part Time" Worker***

Next, Ms. Reissland argues the WCJ "committed legal error in calculating [her] indemnity benefits based on her classification as a 'part time' worker." Ms. Reissland disputes that Valluzzo hired her as a part-time employee; and she notes that under La. R.S. 23:1021(11), the record must demonstrate an "objective finding that the employee **<u>knowingly</u>** accepted employment under [the limited conditions delineated in La. R.S. 23:1021(11)] at the time of his [or her] hiring." Accordingly, Ms. Reissland contends the WCJ should have calculated her average weekly wage using the forty-hour presumption contained in La. R.S. 23:1021(13)(a)(i), which would yield an average weekly wage of $440.00 with an applicable compensation rate of $293.33. Valluzzo does not address this assignment of error in its brief to this Court.

In defining "part-time employee," La. R.S. 23:1021(11) provides that this is "an employee who as a condition of his [or her] hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part-time position." If an

20

employment contract does not comply with the definition of part-time employment found in La. R.S. 23:1021(11), it does not controvert the plaintiff-employee's claim of full-time status. *Leger v. A-1 Nursing Registry*, 1998-1731, p. 4 (La. App. 3 Cir. 4/28/99), 737 So.2d 142, 144. As explained by the Third Circuit, "[a]ny measure short of informing the employee of his part-time status does not satisfy the" definition of part-time employee found in La. R.S. 23:1021(11). *Id.* (quoting *Scott v. Central Indus., Inc.*, 602 So.2d 201 (La. App. 3d Cir. 1992)). Additionally, pay stubs cannot establish an employee's status as full- or part-time because the employee does not receive these until after accepting his or her position. *Id.* at pp. 8-9, 737 So.2d at 147.

In *Johnson v. Travelers Insurance Co.*, the Third Circuit focused on the "knowingly" aspect of La. R.S. 23:1021(11), stating:

> The record is replete with evidence that plaintiff did not "knowingly" accept employment that customarily provides for less than forty hours per week. Plaintiff considered himself to be a full-time, regular employee. . . . Furthermore, plaintiff was always available for work and he worked as much as they needed him. The record reflects that plaintiff was never told that he was classified or considered "part-time". It is incumbent upon employers to define "part-time" status of certain employees and to establish some procedure to satisfy the criterion that the employee had knowingly taken a part-time job.

509 So.2d 519, 521 (La. App. 3d Cir. 1987). In so ruling, the Third Circuit also quoted favorably from the trial court's reasons for judgment, which emphasized a liberal construction of La. R.S. 23:1021 in favor of the employee:

> "Workmen's Compensation rests upon the sound economic principle that those who enjoy the product of a business-whether it be in the form of goods or services-should ultimately bear the costs of the injuries or deaths that are incident to the manufacture, preparation and distribution of the product." Malone and Johnson, supra, Section 32, p. 38. These costs are then passed on to the consumer. supra, Section 32, p. 39. The alternative is to have the employee shoulder the costs for which he is ill equipped to do, and he cannot pass the costs on to the consumer. *See also Trappey v. Lumberman's Mut. Cas. Co.* 229

21

La. 632, 86 So.2d 515 (1956); *Green v. Heard Motors Co.*, 224 La. 1077, 71 So.2d 849 (1954). Our Supreme Court held that the Compensation Act must be given a liberal interpretation to effecurate [sic] its beneficent purpose of relieving workmen of the crusing [sic] economic burden of work-connected injuries by diffusing the cost in channels of commerce. *Danielsen v. Security VanLines, Inc.* 245 La. 450, 158 So.2d 609 (1963).

*Id.*, 509 So.2d at 520 (alterations in original).

In *Leger*, the plaintiff-employee filed a Disputed Claim for Compensation – Form 1008, in which she "claimed she should be receiving the maximum compensation rate of $330.00 a week rather than the $268.75 she was receiving at the time." 1998-1731, p. 2, 737 So.2d at 143. "[T]he workers' compensation judge found that [the plaintiff-employee] was a full-time employee entitled to the maximum compensation rate of $330.00 based on a forty[-]hour presumption of wages" but "denied [her] request for penalties and legal fees." *Id.* On appeal, the defendant-employers asserted the workers' compensation judge erred in finding the plaintiff-employee was a full-time employee, and the plaintiff-employee asserted the workers' compensation judge erred in not awarding penalties and attorney's fees to her. *Id.* at pp. 3, 6, 737 So.2d at 144-145. On appeal, the Third Circuit affirmed the finding that the plaintiff-employee was a full-time employee. *Id.* at p. 4, 737 So.2d at 144. In so ruling, the Third Circuit noted the defendant-employers relied on the plaintiff-employee's employment contract and pay stubs to prove that they were reasonable in believing her position was a part-time one. *Id.* at p. 7, 737 So.2d at 146. The Third Circuit explained that the employment contract did not comply with definition of part-time employment found in La. R.S. 23:1021 so as to controvert the plaintiff-employee's claim of full-time status. *Id.* at p. 8, 737 So.2d at 157. Regarding the pay stubs, the Third Circuit explained that these "show[ed] nothing more than that [the plaintiff-employee] did not work forty hours a week"

but could not "show that [she] accepted the position knowing it was part-time since any pay checks could not have been received until after the position was accepted." *Id.* at pp. 8-9, 737 So.2d at 147. For those reasons, the Third Circuit also found the defendant-employers failed to reasonably controvert the plaintiff-employee's claim that she should have been treated as a full-time employee for workers-compensation benefits. *Id.*

We find *Leger* analogous to the matter *sub judice*. As previously defined, Ms. Reissland's situation does not comport with the definition of part-time employee found in La. R.S. 23:1021(9). In discussing the computation of Ms. Reissland's benefits, Ms. Sulik testified that the "job code" listed on Ms. Reissland's pay stubs was "job code 100" which indicated "crew member," and Ms. Sulik explained that all crew members are considered part-time employees. Even assuming arguendo that Ms. Reissland knew what the "job code 100" designation meant, as in *Leger*, Ms. Reissland's pay stubs are not evidence that she *accepted* the position knowing it was part-time because she did not receive any pay checks until after she agreed to work for Valluzzo. Further, Ms. Sulik testified that there was a distinction between crew members and salaried managers in that Valluzzo considered only the latter to be full-time employees, but nothing in Ms. Reissland's employment documents delineates this distinction nor could Ms. Sulik point to a written document establishing same. That is, while Valluzzo classified this as a part-time position per La. R.S. 23:1021(11), the problem is that Ms. Reissland did not know this. The Valluzzo policy handbook defines part-time employees as "those who are not assigned to a temporary or introductory status and who are regularly scheduled to work less than the full-time work schedule." Again, whether Ms. Reissland ultimately would or would not be "regularly scheduled to

23

work less than the full-time work schedule," was not information known to Ms. Reissland's at the time she accepted the position with Valluzzo. In fact, Ms. Reissland testified during her deposition that Valluzzo informed her that she would be a full-time employee. Valluzzo failed to offer any evidence in writing or any testimony to show they informed Ms. Reissland that she would be a part-time employee. As in *Johnson*, Ms. Reissland testified about working overtime on multiple occasions during her tenure on the job, such that she was available to work and worked when Valluzzo needed her. Also as in *Johnson*, it was incumbent upon Valluzzo—as the employer—to define the "part-time" status of Ms. Reissland and to establish some procedure to satisfy the criterion that she knowingly accepted part-time employment. Valluzzo failed to do that. Therefore, we agree with Ms. Reissland that the WCJ erred in calculating her indemnity benefits based on her classification as a part-time worker. We remand with instructions to the WCJ to calculate Ms. Reissland's benefits based on La. R.S. 23:1021(13)(a)(i).

### *Assignment of Error Number Four: Penalties and Attorney's Fees Pursuant to La. R.S. 23:1201(I) and/or (F)*

Next, in her fourth assignment of error, Ms. Reissland contends the WCJ erred in failing to award multiple penalties and attorney's fees pursuant to La. R.S. 23:1201.1(I) and/or (F). In this section of her brief, Ms. Reissland asserts five reasons why she is entitled to certain penalties and fees. We will discuss each reason in turn.

### *Ms. Reissland's First Argument*

Ms. Reissland contends that although "La. R.S. 23:1201(K)(2) provides an employer 'safe harbor' protection from imposition of penalties and attorney's fees

if it accepts and complies with a [workers' compensation judge's] preliminary determination," that "employer must first show it complied with La. R.S. 23:1201.1(A)-(E)" to be entitled to said preliminary determination. Ms. Reissland argues that the WCJ legally erred in finding that Valluzzo was entitled to a PDH under La. R.S. 23:1201.1(H) as Valluzzo failed to comply with La. R.S. 23:1201.1(A)-(E). More particularly, Ms. Reissland argues Valluzzo did not comply with La. R.S. 23:1201.1(A) when it "**failed** to issue *Notices of Controversion* (*LWC-WC Form 1002*)" upon denying Dr. Rodriguez's request for authorization for continued care and injections. Ms. Reissland asserts that because Valluzzo was not entitled to the PDH in the first place, it was also not entitled to the safe harbor provisions of La. R.S. 23:1201.1(K)(2), such that she is entitled to penalties and attorney's fees under that statute.

In response, Valluzzo counters that Ms. Reissland "did not file or assert <u>any timely</u> objection or proffer whatsoever that [it] had not issued the appropriate LWC Form 1002 <u>contesting causation</u>." Valluzzo argues Ms. Reissland "is now improperly and untimely asserting this objection to the PDH at the [a]ppellate level without ever making any timely objection whatsoever at the [t]rial [c]ourt level." We agree with Valluzzo.

Rule 1-3 of the Uniform Rules of the Courts of Appeal provides, in pertinent part, that "[t]he Courts of Appeal shall review issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise." Under that rule, "in general, issues not argued before the trial court for decision will not be considered for the first time on appeal, unless the interest of justice clearly requires otherwise." *Clavo v. Fara Ins. Serv.*, 2018-0727, p. 7 (La. App. 4 Cir. 1/30/19), 363 So.3d 286, 291 (first citing

*Hurst v. Dep't of Police*, 2014-0119, p. 6 (La. App. 4 Cir. 7/23/14), 146 So.3d 857, 860-61; and then citing Uniform Rules, Courts of Appeal, Rule 1-3). In discussing the "interest of justice" exception, the Third Circuit has explained that it "is not without limitation" and listed the following "limited circumstances" when courts have applied it:

> (a) when fundamental constitutional due process is involved; (b) when a jurisdictional concern is implicated; (c) when a trial judge may have had improper ex parte communication; (d) where the proper resolution of an issue is beyond a doubt or where injustice might occur; (e) when an incorrect law has been applied; and (f) when a pure question of law is involved and the failure to consider it would result in the miscarriage of justice.

*Bayou Bridge Pipeline, LLC v. 38.00 Acres*, 2019-565, p. 9 (La. App. 3 Cir. 7/15/20), 304 So.3d 529, 539.

If the interest of justice exception does not apply and a party presents an argument for the first time on appeal, then that party "seek[s] to introduce a completely new issue to th[e] case," one which "was neither presented . . . to the trial court, nor ruled upon by the trial court." *McLane v. S., Inc. v. Bridges*, 2013-1819 (La. App. 1 Cir. 11/3/14), 2014 WL 5588893, at *4. Were an appellate court to consider that new issue, it would be equivalent to permitting a party to shift to a new argument and to "a better horse to ride" at the appellate level after "[h]aving met with a lack of success at the trial court with" her original argument. *Id.*, at *4. This is unfair to the opposing party and presents potential judicial inefficiency problems by not permitting the trial court to resolve issues in the first place. In discussing Uniform Rule 1-3, the Louisiana First Circuit Court of Appeal has explained that "[La.] C.C.P. art. 2164 provides authority for [an appellate] court to take up an issue raised . . . for the first time under special circumstances," such as "a workers' compensation case, [or] one in which a party is appearing without the

benefit of legal counsel." *Id.* (citing *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La. 1993)). Nonetheless, under the discretion vested in it by Uniform Rule 1-3 and under La. C.C.P. art. 2164, an appellate court may decline to consider an issue raised for the first time on appeal by a workers' compensation claimant. *See Allen v. Affordable Home Furnishings*, 2013-176, p. 4 (La. App. 3 Cir. 11/13/13), 130 So.3d 345, 347-48; *James v. Formosa Plastics Corp. of La.*, 1995-1749, p. 5 (La. App. 1 Cir. 4/4/96), 672 So.2d 319, 322.

Turning to the matter *sub judice*, Ms. Reissland did not present the issue of whether Valluzzo violated La. R.S. 23:1201.1(A) by failing to issues Notices of Controversion to the WCJ, nor did the WCJ rule upon same. Rather, in her Motion to Strike, Ms. Reissland contended Valluzzo failed to demonstrate it complied with La. R.S. 23:1201.1(A) insofar as Valluzzo did not show that it sent a Notice of Initial Payment (LWC-WC Form 1002) to Ms. Reissland on the same day that it first issued compensation. The WCJ denied Ms. Reissland's Motion to Strike on this basis. Thus, having met with a lack of success before the WCJ, Ms. Reissland now seeks to introduce a new issue and shift her argument on appeal. Using the examples from *Bayou Bridge Pipeline, LLC*, "as guideposts," we do not find that the issue of whether Valluzzo complied with the requirements of La. R.S. 23:1201.1(A) insofar as issuing Notices of Controversion falls within the parameters of the "interest of justice" exception. 2019-565, p. 9, 304 So.3d at 539. Nor do we find that the circumstances of this case warrant us exercising our discretion under La. C.C.P. art. 2164 and ruling on Ms. Reissland's new argument. Accordingly, we do not consider Ms. Reissland's argument that the WCJ legally erred in finding Valluzzo was entitled to a PDH even though Valluzzo failed to issue Notices of Controversion.

### Ms. Reissland's Second Argument

In her second argument as to why the WCJ erred in failing to award multiple penalties and attorney's fees, Ms. Reissland contends Valluzzo forfeited the safe harbor protections of La. R.S. 23:1201.1(K)(2) when it failed to comply with La. R.S. 23:1201.1(J)(4). Specifically, Ms. Reissland asserts Valluzzo forfeited the protections because Ms. Sulik testified at the PDH that she used the company handbook when determining Ms. Reissland's compensation benefits, yet Valluzzo did not provide the company handbook to Ms. Reissland's counsel within ten days of her request for a PDH.

Louisiana Revised Statutes 23:1201.1 is titled "Controversion of compensation and medical benefits." In terms of the safe harbor protections discussed by Ms. Reissland, La. R.S. 23:1201.1(K)(2) states that "[a]ny employer or payor who accepts and complies with the workers' compensation judge's determination within ten calendar days, shall not be subject to any penalty or attorney fees arising out of the original notice which was the subject of the preliminary hearing." Turning to the section of the statute that Ms. Reissland contends Valluzzo violated, La. R.S. 23:1201.1(J)(4) provides:

> Any employer or payor requesting a preliminary determination hearing shall produce all documentation relied on by the employer or payor in calculating, modifying, suspending, terminating, or controverting the employee's benefits. These documents shall be disclosed to the employee or the employee's representative within ten days of the request for the preliminary determination hearing.

Delineating the result of failing to comply with the statute, La. R.S. 23:1201.1(L) states:

> Notwithstanding any provision in this Section to the contrary, the failure to comply with any provision of this Section shall not itself be considered a failure to reasonably controvert benefits; however,

28

failure of the employer or payor to comply shall result in loss of penalty and attorney fee protections provided in this Section.

In the matter *sub judice*, the record establishes Valluzzo first requested a PDH on September 19, 2023, when it filed its Answer. Nonetheless, Valluzzo did not provide a copy of the company handbook to Ms. Reissland's counsel until November 15, 2023. Thus, as Ms. Reissland correctly points out, Valluzzo violated La. R.S. 23:1201.1(J)(4). As Ms. Reissland also accurately explains, La. R.S. 23:1201.1(L) mandates the loss of the penalty and attorney's fee protections provided in La. R.S. 23:1201.1(K)(2) when an employer has failed to comply with any part of the statute. Ms. Reissland is therefore correct that Valluzzo lost the protections from penalties and attorney's fees provided by La. R.S. 23:1201.1(K)(2). This merely means, however, that Valluzzo lost the *protections* from penalties and attorney's fees, not that Ms. Reissland is automatically entitled to same absent us finding a basis for such an award. *See Hendrick v. Patterson*, 47,668, p. 16 (La. App. 2 Cir. 1/16/13), 109 So.3d 475, 484-85 (holding that "[a]ttorney fees and penalties are never automatically assessed against the defeated party, but rather are awarded only when the statutory requirements for such are met"). Therefore, we will continue our consideration of Ms. Reissland's arguments as to why she is entitled to penalties and attorney's fees.

### Ms. Reissland's Third Argument

Next, Ms. Reissland contends that when Valluzzo terminated her benefits after she refused to sign a HIPPA authorization to allow Valluzzo's counsel to have access to her medical records prior to the beginning of litigation, Valluzzo's termination of her benefits was arbitrary, capricious, and without probable cause. As explained by Ms. Reissland in her brief, after she signed a HIPPA authorization

permitting Valluzzo's claims adjuster to access her medical records, Valluzzo then contacted her and asked her to execute HIPPA authorizations in favor of its counsel "as the authorized designee of Valluzzo." Ms. Reissland states in her brief that she objected to Valluzzo's counsel having access to her medical records before the case was even in litigation, so she "revoked *all* prior authorizations," after which Valluzzo terminated her workers' compensation indemnity benefits. (Emphasis added.) Ms. Reissland argues that, "[s]imply put, there is no legal basis for suspending benefits when a claimant refuses to allow an employer's attorney access to her medical records."

Regarding the "Release of medical records and information," La. R.S. 23:1127(B) provides:

> A. It is the policy for the efficient administration of the workers' compensation system that there be reasonable access to medical information for all parties to coordinate and manage the care for the injured worker and to facilitate his return to work.
>
> B. (1) In any claim for compensation, a health care provider who has at any time treated the employee related to the compensation claim shall release any requested medical information and records relative to the employee's injury, to any of the following persons:
>
> (a) The employee, his agent, or his representative.
>
> (b) A licensed and approved vocational rehabilitation counselor assigned to the employee's claim.
>
> (c) Another health care provider examining the employee.
>
> (d) The employer, his agent, or his representative.
>
> (e) The employer's workers' compensation insurer or its agent or representative.
>
> (2) Any information relative to any other treatment or condition shall be available to the employer or his workers' compensation insurer by subpoena or through a written release by the claimant.

30

Ms. Reissland contends Valluzzo violated La. R.S. 23:1201(I) by terminating her benefits after she refused to sign a written release. That statute provides:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

La. R.S. 23:1201(I).

As explained by the Louisiana First Circuit Court of Appeal in discussing La. R.S. 23:1201(I), "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstance[s] presented, or of seemingly unfounded motivation. The crucial inquiry is whether the employer has [an] articulable and objective reason for discontinuing benefits at the time it took that action." *Life Flight of New Orleans v. Homrighausen*, 2005-2538, p. 8 (La. App. 1 Cir. 12/28/06), 952 So.2d 45, 52 (citing *Authement v. Wal-Mart*, 2002-2434, p. 11 (La. App. 1 Cir. 9/26/03), 857 So.2d 564, 574). The "[s]tatutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature," so they "must be strictly construed." *New Line Environmental & Canal HR v. Davis*, 2015-1885, p. 10 (La. App. 1 Cir. 10/7/16), 205 So.3d 921, 928. With these precepts in mind, we consider whether Valluzzo's termination of Ms. Reissland's benefits was arbitrary, capricious, or without probable cause.

Though Ms. Reissland argues Valluzzo had "no legal basis for suspending [her] benefits," such that it acted arbitrarily, capricious, and without probable cause, under the circumstances of this case, we disagree. When Ms. Reissland refused to sign a HIPPA in favor of Valluzzo's counsel, she also notably revoked

all prior authorizations as admitted in her brief to this Court. As quoted above, within the workers' compensation scheme, La. R.S. 23:1127 seeks to establish "reasonable access to medical information for *all* parties." La. R.S. 23:1127(A) (emphasis added). Among those to whom "a health care provider who has at any time treated the employee related to the compensation claim shall release any requested medical information and records relative to the employee's injury" are "[t]he employer, his agent, or his representative," as well as "[t]he employer's workers' compensation insurer or its agent or representative." La. R.S. 23:1127(B)(1)(d-e). When Ms. Reissland revoked her prior authorizations, this included authorizations that permitted Valluzzo's claims adjuster to access her medical records. Ms. Reissland thereby denied Valluzzo's "workers' compensation insurer or its agent or representative" access to any of her records, including those related to her compensation claim and alleged injury, in contravention of La. R.S. 23:1127(B)(1)(e). As a result of Ms. Reissland revoking all prior authorizations, Valluzzo itself also no longer had access to Ms. Reissland's medical records despite the employer being among those to whom a health care provider is to "release any requested medical information and records relative to the employee's injury." La. R.S. 23:1127(B)(1)(d). Upon Ms. Reissland revoking all prior authorizations, Valluzzo and its claims adjuster could no longer "coordinate and manage" her claim, let alone investigate it, thereby providing Vallluzo with an "articulable and objective reason for discontinuing benefits." Based on the facts of this case, we find Valluzzo's decision to terminate Ms. Reissland's benefits—in the face of a lack of access to her medical records regarding treatment related to the alleged accident and injury forming the basis of her claim—did not rise to the

level of arbitrary, capricious, or without probable cause. Accordingly, we disagree with Ms. Reissland that she is entitled to attorney's fees under La. R.S. 23:1201(I).

In the alternative, Ms. Reissland "contends she is entitled to a $2,000.00 penalty pursuant to La. R.S. 23:1201(F) for [Valluzzo's] failure to reasonably controvert her benefits on those grounds." Apart from that one statement in her brief, Ms. Reissland provides no argument in support of that claim. Regarding the appellant brief, Rule 2-12.4(B)(4) of the Uniform Rules of the Courts of Appeal instructs that "[a]ll assignments of error and issues for review *shall* be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed." (Emphasis added.) As recently explained by the Louisiana Second Circuit Court of Appeal, "A mere statement of an assignment of error in a brief does not constitute the briefing of the assignment of error." *Young v. Woods*, 56,328, p. 12 (La. App. 2 Cir. 7/16/25), 418 So.3d 475, 482 (citing *State v. Davis*, 52,517 (La. App. 2 Cir. 5/22/19), 273 So. 3d 670). We therefore exercise our discretion under Uniform Rule 2-12.4 and consider Ms. Reissland's argument of entitlement to a penalty under La. R.S. 23:1201(F) abandoned because she did not brief this issue.

### Ms. Reissland's Fourth Argument

Next, Ms. Reissland asserts that because Valluzzo improperly classified her as a part-time worker in calculating her benefits, she is entitled to a $2,000 penalty under La. R.S. 23:1201(F). That statute provides, in pertinent part:

> F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed

claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

La. R.S. 23:1201(F)(2).

To reasonably controvert a claim as that phrase is used in La. R.S. 23:1201(F)(2), "the defendant[-employer] must have some valid reason or evidence upon which" it based its decision. *Brown v. Texas-LA Cartage, Inc.*, 1998-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. In determining whether the employer has such a reason or such evidence, the "court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual . . . information to reasonably counter the factual . . . information presented by the claimant[-employee]." *Id.* In general, Louisiana courts do not impose "penalties . . . for simple miscalculations," but the courts do impose "penalties and attorney's fees . . . where the insurer gather[ed] incomplete data in preparing the claim." *Richard v. HSLI & Touro Infirmary*, 2012-873, p. 10 (La. App. 5 Cir. 5/23/13), 119 So.3d 617, 623 (citing *Stegall v. J. & J Exterminating*, 1994-1279 (La. App. 3 Cir. 3/1/95), 651 So.2d 400). As recently explained by the Louisiana First Circuit Court of Appeal, "[t]he fact that [a defendant-employer] may have mistakenly miscalculated the amount due or . . . later paid the amount due after it was requested by [the plaintiff-employee's] counsel does not exempt [the

34

defendant-employer] from penalties and/or attorney fees." *Bonvillian v. Great Am. Alliance Ins. Co.*, 2024-1025, p. 9 (La. App. 1 Cir. 5/22/25), 417 So.3d 731, 738.

For the reasons discussed in the section of this Opinion reversing the WCJ's finding that Ms. Reissland was a part-time employee, we also find that Valluzzo failed to reasonably controvert Ms. Reissland's claim that Valluzzo should have calculated her benefits based on her being a full-time employee. Valluzzo also did not present evidence regarding any extenuating circumstances over which it had no control so as to excuse its decision to calculate Ms. Reissland's benefits based on her being a part-time employee as opposed to a full-time one. Instead, based on the record, Valluzzo merely gathered incomplete information in determining Ms. Reissland's benefits by failing to ascertain whether Ms. Reissland had knowingly accepted employment that customarily provided for less than forty hours per week. Therefore, we remand this matter for the WCJ to determine and assess "a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid . . ., together with reasonable attorney fees," noting that "the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate." La. R.S. 23:1201(F).

### *Ms. Reissland's Fifth Argument*

Ms. Reissland further argues her attorney is entitled to attorney's fees under La. R.S. 23:1201(I) and/or (F). Other than listing La. R.S. 23:1201(I) in the heading of this subsection of her brief, Ms. Reissland does not further brief its applicability. Elsewhere in this section of her brief regarding penalties and attorney's fees, Ms. Reissland contended she was entitled to attorney's fees under La. R.S. 23:1201(I) because Valluzzo was arbitrary, capricious, and without

probable cause in terminating her benefits after she refused to sign a HIPPA in favor of Valluzzo's counsel and revoked her prior authorizations. We have already discussed why Valluzo's decision to terminate Ms. Reissland's benefits was not arbitrary, capricious, and without probable cause in light of Ms. Reissland preventing Valluzo from having access to her medical records so as to investigate, coordinate, and manage her claim contrary to La. R.S. 23:1107. Because Ms. Reissland's brief provides no other information or argument as to the applicability of La. R.S. 23:1201(I) or how this section of her brief differs from the prior one, we decline to consider the matter further. *See* Rule 2-12.4, Uniform Rules, Courts of Appeal.

Likewise, Ms. Reissland provides no additional information regarding how her contention that her counsel is entitled to attorney's fees under La. R.S. 23:1201(F) in this subsection of her brief differs from her contentions elsewhere in her brief. In the prior subsection, we already concluded that Ms. Reissland is entitled to attorney's fees because Valluzzo improperly designated her a part-time employee in computing her benefits. In light of Ms. Reissland's failure to brief her alleged entitlement to additional attorney's fees under La. R.S. 23:1201(F), we exercise our discretion under Uniform Rule 2-12.4 and do not further consider this matter.

***Assignment of Error Number Five: Cost Reimbursement Pursuant to La. R.S. 23:1310.9 and Judicial Interest Pursuant to La. R.S. 23:1201.3(A)***

Finally, Ms. Reissland asserts the WCJ "committed legal error in failing to award [her] cost reimbursement pursuant to La. R.S. 23:1310.9 and [in] failing to award judicial interest on all penalties, costs, and attorney's fees awarded." Ms. Reissland contends that because she "incurred costs in obtaining medical records,

depositions, filing fees, and preparation of the trial record herein," she seeks reimbursement of said "costs in accordance with La. R.S. 23:1310.9 to be determined by a [r]ule to [t]ax [c]osts." Additionally, Ms. Reissland seeks judicial interest on past due indemnity benefits, medical benefits, penalties, attorney's fees and costs pursuant to La. R.S. 23:1201.3(A).

We begin with Ms. Reissland's request for costs under La. R.S. 23:1310.9. That statute provides:

> If the workers' compensation judge before which any proceedings for compensation or concerning an award of compensation have been brought, under the Workers' Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the workers' compensation judge shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.

La. R.S. 23:1310.0. A workers' compensation judge has broad discretion in his assessment of costs and fees under La. R.S. 23:1310.9. *Guillory v. St. Michael PFU, LLC*, 2023-674, p. 8 (La. App. 3 Cir. 4/17/24), 389 So.3d 140, 146-147 (citations omitted). On appeal, the appellate court considers whether the workers' compensation judge abused that discretion. *Id.* In *Guillory*, the Third Circuit explained that while La. R.S. 23:1310.9 "mandates the assessing of costs in situations when the proceedings have not been brought on a reasonable ground or when the denial of benefits has not been based on a reasonable ground," the applicability of that statute is contingent on the trial court actually making one of the foregoing determinations. *Id.* at p. 8, 389 So.3d at 146. That is, if "[t]he trial court did not make such a determination," then "that statute is inapplicable." *Id.* In the matter *sub judice*, the WCJ made no such determination as to the unreasonableness of Valluzzo's denial of benefits, so this statute is inapplicable.

Thus, we disagree with Ms. Reissland that she is entitled to cost reimbursement under La. R.S. 23:1310.9 and deny her request for same.

We next turn to Ms. Reissland's request for judicial interest under La. R.S. 23:1201.3(A) "on all penalties, costs, and attorney's fees awarded." Previously, we concluded Ms. Reissland is not entitled to costs under La. R.S. 23:1210.9, and elsewhere throughout this Opinion we have not awarded costs to Ms. Reissland. Accordingly, there are no costs for which we must consider whether to attach judicial interest.

In support of her contention that a court can award judicial interest on penalties and attorney's fees when specifically prayed for, Ms. Reissland cites to *Smith v. Quarles Drilling Co.*, 2004-0179 (La. 10/29/04), 885 So.2d 562. As explained by the Louisiana Supreme Court in *Smith*, "Interest on an attorney fee award is not 'allowed by law' pursuant to [La.] R.S. 23:1201.3." 2004-0179, p. 9, 885 So.2d at 568 (citing La. C.C.P. art. 1921). This is because "penalties and attorney['s] fees in workers' compensation cases are not considered compensation." *Day v. Superior Derrick Servs.*, 2011-749, p. 14 (La. App. 3 Cir. 12/7/11), 80 So.3d 654, 665 (citing *Burns v. Interstate Brands Corp.*, 2009-705 (La. App. 3 Cir. 2/3/10) 30 So.3d 271). Therefore, as Ms. Reissland correctly observes, "in order to receive interest on penalties and attorney fees, a party must pray for interest in his pleadings." *Id.* Ms. Reissland did so, such that she is entitled to judicial interest on the penalty and attorney's fees we awarded under La. R.S. 23:1201(F) in light of Valluzzo's failure to reasonably controvert her claim that she was entitled to full-time status for purposes of computing her benefits.

Within the workers' compensation scheme, an award of compensation is distinct from an award of penalties and attorney's fees. *Sharbono v. Steve Lang &*

*Son Loggers*, 1997-0110, p. 6 (La. 7/1/97), 696 So.2d 1382, 1386. That is, "fees and penalties are not 'compensation' within the meaning of the statute." *Id.* As such, the Louisiana Supreme Court has held that the date on which interest attaches on these respective awards also differs. *See generally id.* While interest attaches to compensation on the date of demand, interest attaches to penalties and attorney's fees on the date of judgment. *Id.* at pp. 10-11 (La. 7/1/97), 696 So.2d 1382, 1388-89. As explained in *Sharbono*:

> Because attorney's fee awards depend for their very existence upon a discretionary finding . . ., any amount of attorney's fees awarded to the victor is "due" only from the date of judgment. Prior to that time, the victor was not entitled to those funds. Because the losing party did not deprive the victor of the use of funds to which the victor was entitled, no prejudgment interest may be calculated on the award of attorney's fees. Rather, post[-]judgment interest on that amount may be calculated only from the date the debt came into being and thus became due to the date it is paid. To hold otherwise would be to unfairly compensate the victor, and penalize the loser, for a deprivation which never took place. . . .

> Finally, there is the matter of interest on penalties. Both federal and state jurisprudence is nearly uniform in holding that penalty interest is entirely of the post-judgment variety, and thus is calculated only from the date the penalties are awarded until the date they are paid. . . .

> Just as with attorney's fees awards, penalties are never automatically assessed against the defeated party, but rather are awarded only when the statutory requirements for such are met. . . . Because awards of penalties and attorney's fees are not automatic . . ., they come due, if at all, only on the date of their award . . .; thus, such awards may not earn interest until after that date.

*Id.* (footnotes omitted). In light of the foregoing jurisprudence, Ms. Reissland is entitled to judicial interest on the penalty and attorney's fees that the WCJ will assess under La. R.S. 23:1201(F)—for Valluzzo's failure to reasonably controvert her claim that she was entitled to full-time status for purposes of computing her benefits—upon the WCJ determining same.

### Attorney's Fees and Costs for Appeal

Ms. Reissland also contends she "is entitled to additional attorney's fee[s] for additional work performed in pursuing this appeal and for the costs of the appeal to be assessed against" Valluzzo. Louisiana Code of Civil Procedure Article 2164 provides, in pertinent part:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

An appellate court has "discretion to award . . . attorney's fees for appellate work." *Chandler v. Oachita Par. Sheriff's Office*, 48,179, pp. 15-16 (La. App. 2 Cir. 8/7/13), 121 So.3d 1216, 1226 (citing *Nesbitt v. Nesbitt*, 46,514 (La. App. 2 Cir. 9/21/11), 79 So.3d 347). In deciding whether to exercise aforesaid discretion we are mindful that "[a]wards of attorney['s] fees in workers' compensation cases are essentially penal in nature, and are intended to deter indifference and undesirable conduct by employers and insurers toward injured employees." *Smith*, 2004-0179, p. 6, 885 So.2d at 566 (citations omitted). Nonetheless, while "the benefits in the Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed." *Id.* at p. 7, 885 So.2d at 566 (citations omitted). Even if a plaintiff-employee largely prevails on appeal, the discretion accorded to the appellate court permits the court to decline to award attorney's fees. *See King v. Gulf Coast Constr., Inc.*, 1994-1019, p. 3 (La. App. 4 Cir. 12/28/94), 648 So.2d 498, 500. Considering the facts of this case and a lack of "indifference and undesirable conduct" by Valluzzo toward Ms. Reissland, we decline to exercise our discretion to award attorney's fees for work on appeal to Ms. Reissland.

Turning to Ms. Reissland's request for costs, "A court can tax costs against any party in any manner it considers equitable." *Latour v. Steamboats, LLC*, 2023-00027, p. 17 (La. 10/20/23), 371 So.3d 1026, 1041 n.10 (first citing La. C.C.P. art. 1920; and then citing La. C.C.P. art. 2164). This is true of both the trial and appellate courts. *Danna v. Ritz-Carlton Hotel Co.*, 2020-0116, pp. 37-38 (La. App. 4 Cir. 3/24/21), 365 So.3d 679, 705 (first citing La. C.C.P. art. 1920; then citing La. C.C.P. art. 2164; and then citing *Scamardo v. Dunaway*, 1994-545, p. 11 (La. App. 5 Cir. 2/15/95), 650 So.2d 417, 422). However, considering the facts of this case, we decline to assess Valluzzo with the costs of this appeal.

**Valluzzo's Assignments of Error**

As delineated previously, Valluzzo also asserted assignments of error in its brief to this Court. In its first assignment of error, Valluzzo contends the WCJ erred in failing to award all attorney's fees it incurred as part of the January 13, 2025 restitution judgment pursuant to La. R.S. 23:1208. Our reversal of the WCJ's finding that Ms. Reissland violated La. R.S. 23:1208 and vacatur of the January 13, 2025 judgment renders this assignment of error moot.

In its second assignment of error, Valluzzo asserts the WCJ manifestly erred in failing to award attorney's fees and costs pursuant to La. R.S. 23:1310.9 plus judicial interest on the restitution award pursuant to La. R.S. 23:1201.3. Beginning with the latter, we have vacated the WCJ's January 13, 2025 restitution judgment, thereby rendering this assignment of error moot. Regarding attorney's fees and costs under La. R.S. 23:1310.9, Valluzzo contends that "[a]ppellate courts have recognized that costs may be awarded under La. R.S. 23:1310.9 when fraud is found under La. R.S. 23:1208." However, we have reversed the WCJ's finding of a

41

violation of La. R.S. 23:1208, such that Valluzzo's contention it is entitled to fees and costs for same is now moot.

Finally, in its third assignment of error, Valluzzo argues this Court should modify and revise the WCJ's January 13, 2025 restitution judgment to award Valluzzo "all additional damages and costs, including penalties and attorney's fees upon the running of all deadlines, pursuant to La. R.S. 23:1201(G)." Louisiana Revised Statutes 23:1201(G) provides:

> If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

Again, Valluzzo is seeking additional amounts stemming from the now-vacated January 13, 2025 restitution judgment. Because we have vacated that judgment, Valluzzo's third assignment of error is now moot too. In sum, all three of Valluzzo's assignments of error in its appellee brief have been rendered moot by our prior holdings. Next, we consider Valluzzo's Answer.

**<u>Valluzzo's Answer</u>**

As previously stated, Valluzzo filed an Answer with this Court wherein it seeks modification of certain aspects of the WCJ's December 5, 2024 judgment and the WCJ's January 13, 2025 judgment, as well as frivolous appeal damages. In its Answer, Valluzzo has six requests. Because the first, third, and fourth requests

are related, we will discuss those together before moving onto the second, fifth, and sixth requests.

***Requests Numbers 1, 3, and 4***

In its first request, Valluzzo seeks review of the WCJ's failure to award Valluzzo all attorney's fees incurred to be made part of the restitution award pursuant to La. R.S. 23:1208(C)(4). Then, in its third request, Valluzzo asks for judicial interest on the restitution award pursuant to La. R.S. 23:1201.3. In its fourth request, Valluzzo prays for additional costs, including penalties and attorney fees, pursuant to La. R.S. 23:1201(G) for Ms. Reissland's failure to pay any amount required by the WCJ's January 13, 2025 judgment. We already addressed Valluzzo's request pursuant to La. R.S. 23:1201(G) in our resolution of Valluzzo's assignments of error. That request and Valluzzo's first and third requests are for additional amounts stemming from the January 13, 2025 restitution judgment. Because we vacated the WCJ's January 13, 2025 judgment, we deny Valluzzo's first, third, and fourth requests as moot insofar as they are offshoots of the now vacated restitution judgment.

***Request Number 2***

In its second request, Valluzzo asserts the WCJ erred in failing to award the total requested attorney's fees and costs pursuant to La. R.S. 23:1310.9. Valluzzo asks this Court to modify the WCJ's January 13, 2025 judgment so as to award such fees and costs under the statute. However, as previously explained in addressing Valluzzo's assignments of error, Valluzzo seeks fees and costs under La. R.S. 23:1310.9 pursuant to Ms. Reissland's violation of La. R.S. 23:1208. We reversed the WCJ's finding of a violation of La. R.S. 23:1208, so Valluzzo's contention that it is entitled to fees and costs for same is now moot.

43

***Request Number 5***

Next, Valluzzo asserts the WCJ erred in certain parts of the December 5, 2024 judgment, specifically in finding that Ms. Reissland proved the alleged workplace accident of May 4, 2023; proved she sustained a work-related injury; proved she sustained injuries related to the work accident; and proved a causal connection between the accident and her injuries. Additionally, Valluzzo contends the WCJ erred in finding Valluzzo did not prove entitlement to the intoxication presumption due to Ms. Reissland's delay in submitting to its drug testing requests. Further, Valluzzo asserts the WCJ erred in finding Valluzzo failed to prove Ms. Reissland's intoxication was the cause of her work accident. Valluzzo asks this Court to modify these aspects of the WCJ's December 5, 2024 judgment.

Of note, Valluzzo did not provide any explanation or reasons in its Answer as to why this Court should amend these parts of the December 5, 2024 judgment. Louisiana Code of Civil Procedure Article 2133(A) states, in pertinent part, that "[t]he answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer." Because Valluzzo's Answer constitutes an appeal, we will treat the answer like an appellant brief. Regarding the appellant brief, Rule 2-12.4(B)(4) of the Uniform Rules of the Courts of Appeal instructs that "[a]ll assignments of error and issues for review *shall* be briefed. The court may deem as abandoned any assignment of error or issue for review which has not been briefed." (Emphasis added.) In *St. Germain v. St. Germain*, this Court applied Uniform Rule 2-12.4(B)(4) to an appellee's answer. 2020-0146, p. 2 (La. App. 4 Cir. 3/17/21), 315 So.3d 443, 445 n.1. Specifically, the Court deemed appellee's request for "costs and attorney's fees for having to oppose a frivolous appeal" as

44

abandoned because "[c]ounsel did not brief the issue on appeal." *Id.* (citing Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4)). Though Rule 2-12.4(B)(4) gives the appellate court discretion in deciding whether to deem an issue abandoned, as in *St. Germain*, we decline to exercise our discretion and review these parts of the judgment in light of Valluzzo's failure to brief its argument as to their invalidity. To act otherwise, i.e., to analyze and discuss the validity of these parts of the judgment, permits a defendant-appellee like Valluzzo to throw a "kitchen sink" argument at this Court without any effort on its part. There are no extenuating circumstances (e.g., a *pro se* party) that justify Valluzzo's failure to brief these issues. Accordingly, we deny Valluzzo's answer in this regard.

### *Request Number 6*

Finally, Valluzzo requests "all further costs, expenses, and attorney's fees incurred in responding to this appeal" pursuant to La. C.C.P. art. 2133(A). Louisiana Code of Civil Procedure Article 2133 delineates when an appellee must answer an appeal. It provides, in pertinent part, that "[a]n appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." La. C.C.P. art. 2133(A). Further, La. C.C.P. art. 2164 provides:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

In interpreting La. C.C.P. art. 2164, this Court recently held that "unless the appeal is unquestionably frivolous, damages will not be granted" as "[a]ppeals are always favored" and "frivolous appeal damages may result in a chilling effect . . . on the

appellate process." *Hose v. O'Connell*, 2024-0493, p. 43 (La. App. 4 Cir. 5/8/25), ___ So.3d ___, ___, 2025 WL 1341639, at *21 (as amended on rehearing) (internal quotation marks omitted) (quoting *Alexander v. La. State Bd. of Priv. Investigator Exam'rs*, 2023-0159, p. 41 (La. App. 4 Cir. 10/25/24), 409 So.3d 37, 66). This Court has also held that "[b]ecause the statute [La. C.C.P. art. 2164] allowing the imposition of damages for frivolous appeal is penal in nature, it must be strictly construed in favor of the appellant." *Id.* at p. 44, ___ So.3d at ___, 2025 WL 1341639, at *21 (quoting *Forrester v. Bruno*, 2023-0336, 0335, p. 12 (La. App. 4 Cir. 12/7/23), 380 So.3d 598, 606). If there is any "[d]oubt as to whether an appeal is frivolous," then the appellate court should resolve the issue "in the appellant's favor." *Id.* (quoting *Forrester*, 2023-0336, 0335, p. 13, 380 So.3d at 607).

An appeal is a frivolous one if it "does not present a substantial legal question, if the sole purpose of the appeal is delay, or if the appealing counsel does not seriously believe the view of the law that he advocates." *Id.* (quoting *Alexander*, 2023-0159, 409 So.3d at 67). Therefore, an appellate court will award "[d]amages for a frivolous appeal . . . if the appellant is attempting to delay the action, if the appellant does not believe what he is advocating, or if the appeal presents no substantial legal question." *Id.* For an award of frivolous appeal damages to be "proper," the appellant's "proposition advocated" must be "so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes." *Id.* "Unless the appeal meets one of those criteria, the appellate court will not award frivolous appeal damages even if the 'appeal lacks serious legal merit.'" *Id.* (quoting *Forrester*, 2023-0336, 0335, p. 13, 380 So.3d at 607).

46

Applying the rule of strict construction against Valluzzo and considering the record in this case, we conclude Ms. Reissland's appeal is not frivolous. The record does not support a finding that Ms. Reissland filed her appeal for the purpose of delaying the action; her counsel did not seriously believe the law or position advocated; or the appeal presented no substantial legal question(s). Therefore, this matter does not meet the requirements of a frivolous appeal. We deny Valluzzo's request for costs, expenses, and attorney's fees pursuant to La. C.C.P. art. 2133(A).

**DECREE**

For the foregoing reasons, we reverse the WCJ's December 5, 2024 judgment in part; vacate the January 13, 2025 judgment; and remand this matter to the WCJ with instructions. We deny the requests found in Valluzzo's Answer.

**REVERSED IN PART; VACATED IN PART; REMANDED WITH INSTRUCTIONS; ANSWER TO APPEAL DENIED**